## In re RATHMAN.

## RATHMAN v. BOOTH.

(Circuit Court of Appeals, Eighth Circuit. December 30, 1910.)

No. 106, Original. No. 3,366.

*(Syllabus by the Court.)*

1. BANKRUPTCY (§ 288*)—ADVERSE CLAIM—NO JURISDICTION TO DETERMINE ADVERSE CLAIM BY SUMMARY PROCEEDINGS WHEN PROPERTY IN POSSESSION OF CLAIMANT—FACTS—CONCLUSIONS.

B. had mortgages on property of a bankrupt mortgagor more than four months before the petition in bankruptcy was filed. Within the four months the mortgagor made a general assignment, and the assignee took possession and administered the property until the receiver of the state court in a suit to foreclose the mortgages took it from him. A month after the adjudication in bankruptcy, but before the trustee was appointed, the mortgagee commenced a suit in the proper state court to foreclose his mortgages, and served his process on the mortgagor and the assignee who was in the possession of the property. The state court appointed a receiver who took the mortgaged property from the assignee. That court then rendered a decree of foreclosure sale, and caused the property to be sold thereunder to B. and confirmed the sales. After all this had been done, a trustee in bankruptcy was appointed, who more than four months after his appointment filed a petition in the bankruptcy court for an order on B. to show cause why he should not pay to the trustee the value of the mortgaged personal property he bought at the foreclosure sale and why he should not permit a redemption of the real estate upon the payment of an amount less than the amount he paid therefor at that sale. Prior to the filing of this petition, the bankruptcy court had not, through the act of any of its officers, such as referees, receivers, or trustees, demanded or taken possession of any of the mortgaged property as the property of the bankrupt.

*Held:* (1) The bankruptcy court had no jurisdiction to determine in a summary proceeding the merits of the claim of B. under the mortgages and the decree and sales thereunder.

(2) That court had jurisdiction to determine in such a proceeding whether his claim was frivolous or substantial, and whether he or the trustee in bankruptcy was in actual possession of the property, and when it found this claim was substantial, and that he was in possession of the property in controversy, it rightly dismissed the petition of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 293*)—CONSENT REQUISITE TO JURISDICTION OF DISTRICT COURT OF CONTROVERSIES ARISING UNDER SECTION 70E.

Under section 23b of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]), as amended by Act Feb. 5, 1903, c. 487, § 8, 32 Stat. 798 (U. S. Comp. St. Supp. 1909, p. 1312), the District Court has no jurisdiction of controversies between trustees and adverse claimants arising under section 70e of the law as amended in 1903, "unless by consent of the proposed defendant."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

183 F.—58

3. BANKRUPTCY (§ 293*)—THE CLAIMANT OF A LIEN, AN "ADVERSE CLAIM-
ANT."

A claim of paramount or other title is not essential to the character
of an adverse claimant within the meaning of section 23 as amended, in
distinguishing between controversies at law and in equity between trus-
tees as such and adverse claimants and controversies arising in proceed-
ings in bankruptcy.

One who has a substantial claim to a lien created by a bankrupt upon
his property before the petition is filed is equally an adverse claimant
with one who claims absolute title.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417;
Dec. Dig. § 293.*]

4. BANKRUPTCY (§ 288*)— SUMMARY JURISDICTION CONDITIONED BY POSSES-
SION TAKEN BY ACT OF OFFICER OF BANKRUPTCY COURT.

The jurisdiction of the bankruptcy court to determine in a summary
proceeding adverse claims created before the filing of the petition in
bankruptcy to liens upon and titles to property claimed by the trustee as
that of the bankrupt is conditioned and limited by its actual possession
thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec.
Dig. § 288.*]

5. BANKRUPTCY (§ 288*)—POSSESSION BY AN ASSIGNEE FOR CREDITORS WITH-
OUT MORE IS INSUFFICIENT TO ESTABLISH IT.

The test of the summary jurisdiction is that the court of bankruptcy,
through the act of its officers, such as referees, receivers, or trustees, has
taken possession of the res as the property of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec.
Dig. § 288.*]

6. BANKRUPTCY (§ 288*) — JURISDICTION BY SUMMARY PROCEEDING TO TAKE
POSSESSION AND THEN BY LIKE PROCEEDING TO DETERMINE ADVERSE
CLAIMS.

The bankruptcy court has jurisdiction by summary proceeding to take
from assignees and receivers for general creditors in insolvency or wind-
ing up proceedings appointed after four months prior to the filing of peti-
tions in bankruptcy, from officers of courts attaching or replevying with-
in that time, and from others holding for the bankrupt property claimed
to be that of the bankrupt, and then by virtue of the possession thus
taken to determine adverse claims to it by a like proceeding.

But the bankruptcy court may not thus take possession from a re-
ceiver appointed by another court in a suit to enforce a lien antedating
the filing of the petition in bankruptcy, or thereby draw to itself ju-
risdiction summarily to determine the validity of such a lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec.
Dig. § 288.*]

7. BANKRUPTCY (§ 188*)—FILING OF PETITION NOT CAVEAT, INJUNCTION, OR
ATTACHMENT AGAINST HOLDERS OF PRIOR LIENS OR TITLES.

The declaration in Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269,
275 (46 L. Ed. 405), that the filing of the petition in bankruptcy "is a
caveat to all the world and in effect an attachment and injunction," has
been so limited by subsequent decisions of the Supreme Court that it
has no application to those holding substantial claims antedating the
filing, to liens upon or titles to property claimed as that of the bankrupt.
In the absence of proper proceedings to make such claimants parties to
the bankruptcy proceeding, they are strangers thereto, and their claims
are unaffected thereby.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286–295;
Dec. Dig. § 188.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the District of South Dakota.

In the matter of the estate of William T. Harvey, bankrupt. Petition by Frederick W. Rathman, trustee, against Maud Booth, administratrix of the estate of J. S. Booth, for rule to show cause. Judgment for defendant, and petitioner appeals. Dismissed.

Shull, Farnsworth & Sammis and Davis, Lyon & Gates, for appellant.

W. J. Hooper and French & Orvis, for respondent.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. Has the United States District Court sitting in bankruptcy jurisdiction against the objection of a respondent who is in possession of real and personal property under a sale pursuant to a decree of a state court of foreclosure of mortgages that were made by the mortgagor more than four months before the petition in bankruptcy against him was filed, to adjudicate summarily on an order to show cause, the claim of the trustee in bankruptcy that the mortgages, the decree, and the sale were void, that the trustee recover of the respondent the value of the personal property which he purchased under the decree, and that the trustee be permitted to redeem the real estate from the mortgage and the foreclosure sale by paying the amount which the respondent paid for it at the sale less the amount which the mortgagor realized from the sale of a portion of the mortgaged property before the foreclosure sale of the balance to the respondent?

This question is presented by a petition of the trustee to revise an order of the court below which dismissed his petition for an order to show cause, on the ground that without the consent of the respondent and without a plenary suit that court had no jurisdiction to try and determine summarily the adverse claim of the respondent challenged by the petition. The material facts set forth in the petition for the summary adjudication are these: Harvey, the bankrupt, owed J. S. Booth $3,000, for which, in June, 1907, he had given to Booth his promissory note and two mortgages to secure the payment of the note, one on a town lot and his store building situated thereon, and the other on his stock of merchandise with which he was trading. Harvey, with Booth's knowledge and consent, continued to trade with the stock after the chattel mortgage was given, to buy new goods and mingle them with the mortgaged stock, and to sell out of the stock of merchandise, pay the expenses of conducting the business and the price of the purchases of new goods until November, 1907, when he made a general assignment for the benefit of his creditors to one Alexander. The assignee took possession of both the real estate and the personal property and proceeded to sell the merchandise and convert it into money until some time after the sale to Booth in April, 1908, under the decree of the foreclosure of the mortgages, when, upon the demand of the trustee, he delivered to him that portion of the personal property which consisted of purchases after the mortgage was made and which had not been mortgaged, and the trustee proceeded to sell these purchases

and to distribute their proceeds to the creditors. The chattel mortgage did not cover after-acquired property, and it contained no provision authorizing the mortgagee to take possession of the merchandise mortgaged. Between the date of the assignment and the foreclosure sale and on December 30, 1907, a petition for the adjudication of Harvey, a bankrupt, was filed, and on January 22, 1908, he was so adjudged. On February 24, 1908, while Alexander, the assignee, was in possession of both the real and personal property, Booth commenced a suit in the circuit court for Gregory county, in South Dakota, to foreclose his mortgages and caused the summons and complaint therein to be served upon Harvey and upon the assignee. In the regular course of proceedings that state court rendered a decree of foreclosure and sale of the property on March 31, 1908, took possession thereof by means of a receiver, and pursuant to this decree the mortgaged property was sold, conveyed, and delivered by the proper officer of that court to Booth, the purchaser at the foreclosure sales. There is no averment in the petition and no evidence that any receiver, marshal, or other officer of the District Court ever demanded of Booth, or of Alexander, any of the mortgaged property, or that they were ever notified or aware of the proceedings in bankruptcy before the foreclosure sales were made and confirmed by the state court. It was not until April 28, 1908, that the trustee in bankruptcy was appointed, and during the foreclosure proceedings the title and the possession of the property was in the assignee, Alexander, subject to the lien of the mortgages. And it was not until September 16, 1908, more than four months after the foreclosure sales and the possession of Booth, that the trustee filed his petition for this order to show cause. That petition contains averments of the legal conclusions that Alexander, the assignee, was holding the mortgaged property during this time for the bankrupt, that the title to it vested in the trustee as of the date of the filing of the petition, that the officers of the state court and Booth, although the former took and delivered to Booth and the latter at the time the petition for the order to show cause was filed had possession of the property, were never entitled to possession, and that the foreclosure proceedings were void. The order issued upon this petition required the respondent to show: (1) Why the chattel mortgage and the certificate of sale of the real and personal property should not be avoided; (2) why he should not pay to the trustee the value of the mortgaged personal property that he bought at the foreclosure sale; (3) why he should not credit on his certificate of sale of the real estate the amount of the sales of personal property made by the mortgagor, Harvey, before the assignee, Alexander, took possession; and why he should not allow the trustee to redeem the real estate by paying the balance.

It is important that, before entering upon a discussion of the question of jurisdiction, we have clearly in mind the controversies which the trustee presented for adjudication by his petition for this order to show cause. He presented no controversy over the possession by the trustee, or by Booth, of the real or personal property, either for preservation, or for administration or distribution. He did not ask the possession, and the respondent was not called to show cause why he should not deliver the possession of any of the property to the trustee.

What the trustee asked by the petition was the final adjudication of (1) his claim to recover of the respondent for the latter's alleged conversion of the personal property which he bought at the foreclosure sale thereof, the legal damages in conversion, the value of the property converted at the time of its conversion, a claim triable by jury, and (2) his claim to redeem the real estate from the mortgage thereon, whose validity is not challenged, and the foreclosure thereof by paying less than the amount for which this property was purchased by Booth at the foreclosure sale, a claim judicable in a suit in equity on a bill to redeem. And the respondent, who, at the time the petition for the order to show cause was presented, was and for months had been in undisturbed possession of both the real and the personal property, claims adversely that he is not liable for the conversion of the personal property because he was the owner of it from the time of his purchase of it at the foreclosure sale, and that the real estate may not be lawfully redeemed from his purchase at the foreclosure sale by the payment of less than the amount which he paid at the sale therefor with lawful interest. Are these claims summarily judicable by the United States District Court against the protest of the respondent without action at law or suit in equity, or the pleadings or proceedings for the protection of the defendant prescribed by the law for the conduct of such suits?

The bankruptcy law of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797, 798 (U. S. Comp. St. Supp. 1909, pp. 1308, 1312), provides, in section 2, subdivision 7, that the District Courts shall have jurisdiction to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided." The exception in this subdivision is of cases involving those controversies between trustees in bankruptcy and adverse claimants specified in section 23 of the law. Bardes v. Hawarden Bank, 178 U. S. 524, 532, 533, 535, 536, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Wall v. Cox, 181 U. S. 244, 246, 21 Sup. Ct. 642, 45 L. Ed. 845; Bush v. Elliott, 202 U. S. 477, 480, 481, 26 Sup. Ct. 668, 50 L. Ed. 1114. In the original law that part of section 23 which relates to this question read in this way:

"Jurisdiction of United States and State Courts.—(a) The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants, concerning the property acquired or claimed by the trustees in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants. (b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

But section 8 of the act of 1903 amended the latter subdivision by adding to it the words "except suits for the recovery of property under section 60, subdivision b, and section 67, subdivision e." Section 60, subdivision b, and section 67, subdivision e, relate to the avoidance of preferences given within four months of the filing of the pe-

tition in bankruptcy and the avoidance of conveyances and transfers of property made by the bankrupt within four months of the filing of the petition with intent to delay or defraud creditors. These subsections are irrelevant to the questions in the case in hand because no such preference, transfer, or conveyance is charged to have been made by the bankrupt within four months of the filing of the petition here, and the amendment of section 23b by the Act of 1903 gives to the District Court no jurisdiction of the controversies in the case at bar.

Section 70e read in the original act:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it is transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value."

Section 16 of the act of February 5, 1903, amended this subsection by adding thereto these words:

"For the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court, which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

But under section 23, as amended, the court of bankruptcy has no jurisdiction of controversies between trustees and adverse claimants arising under section 70e, "unless by consent of the proposed defendant." For it is only such controversies arising under section 60b and 67e that are by the amendment excepted from the requirement of such consent. Hull v. Burr, 153 Fed. 945, 948, 949, 950, 83 C. C. A. 61, 64, 65, 66; Skewis v. Barthell (D. C.) 152 Fed. 534, 536, 537; Gregory v. Atkinson (D. C.) 127 Fed. 183, 185; Palmer v. Roginsky (D. C.) 175 Fed. 883.

Hence the question in this case is whether the controversies between the contestants are controversies at law and in equity between the trustee and an adverse claimant, as distinguished from controversies arising in proceedings in bankruptcy, within the meaning of section 23 of the bankruptcy law. If they are the former, the bankruptcy court may not, and, if they are the latter, it may, adjudicate them summarily without subpœna, summons, pleadings, and evidence according to the principles, rules, and practice in actions at law and suits in equity.

Whether these controversies are the one or the other, the bankruptcy court undoubtedly had jurisdiction under the order to show cause (1) to investigate and determine whether or not it had, at the time the petition for the order to show cause was filed, or at any other time, actual possession of the property which is the source of the issues here in question (First National Bank v. Title & Trust Company, 198 U. S. 280, 284, 288, 289, 291, 25 Sup. Ct. 693, 49 L. Ed. 1051), and (2) whether the respondent Booth had a substantial or only a frivolous and baseless adverse claim (Mueller v. Nugent, 184 U. S. 1, 15, 22 Sup. Ct. 269, 46 L. Ed. 405; Louisville Trust Company v. Comingor, 184 U. S. 18, 25, 22 Sup. Ct. 293, 46 L. Ed. 413). It made this investigation, found that the property was not and had not been

in its possession as the property of the bankrupt, that Booth was in possession of and that he had an actual and substantial bona fide claim to it. In view of these findings, it dismissed the trustee's petition on the ground that it was without jurisdiction to determine the merits of the issues it presented. Its decree of dismissal seems to be justified by the decisions of the Supreme Court. Bardes v. Hawarden Bank, 178 U. S. 524, 532, 533, 538, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Louisville Trust Co. v. Comingor, 184 U. S. 18, 24, 25, 26, 22 Sup. Ct. 293, 46 L. Ed. 413; Skilton v. Codington, 185 N. Y. 80, 85, 77 N. E. 790, 113 Am. St. Rep. 885; Frank v. Vollkommer, 205 U. S. 521, 522, 526, 528, 529, 27 Sup. Ct. 596, 51 L. Ed. 911; Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620; Harris v. First National Bank, 216 U. S. 382, 385, 30 Sup. Ct. 296, 54 L. Ed. 528; Babbitt v. Dutcher, 216 U. S. 102, 113, 30 Sup. Ct. 372, 51 L. Ed. 402; Bush v. Elliott, 202 U. S. 477, 478, 481, 26 Sup. Ct. 668, 50 L. Ed. 1114; Hiscock v. Varick Bank of New York, 206 U. S. 28, 29, 31, 40, 41, 27 Sup. Ct. 681, 51 L. Ed. 945.

The case in hand is presented to this court both by a petition to revise and by an appeal, but it is not alleged in the petition nor claimed in the assignment of errors that there was any error in the finding of the court below that neither the bankruptcy court nor any of its officers were ever in possession of the property which is the source of the controversies as the property of the bankrupt, either at the time the petition for the order to show cause was filed, or at any other time. The petition for the order to show cause itself shows that none of them was ever in possession of the mortgaged personal property and that the only possession of the store building the trustee ever had was that obtained by him from the assignee after the foreclosure sales to Booth, that this possession continued only a few days while he was selling the personal property that was not mortgaged, and that Booth claimed that during this time the trustee was in possession, not as trustee of the property of the bankrupt, but as his tenant, and demanded rent of him for his occupancy. An occupancy so fleeting and uncertain, without any order of the bankruptcy court to take the property occupied, or any consent of the adverse claimant that the trustee should take it as the property of the bankrupt, by virtue of his authority as trustee, was insufficient to condition or affect the determination of the question of jurisdiction now in hand. As was said of the possession of the proceeds of a sale of mortgaged property under an agreement of the parties and an order of the court by a temporary receiver in bankruptcy in Frank v. Vollkommer, 205 U. S. 521, 522, 523, 529, 27 Sup. Ct. 596, 599 (51 L. Ed. 911), this possession "was not in the circumstances in any sense sufficient to change the ordinary rule giving the state courts jurisdiction any more than the constructive possession in every case created by adjudication."

Again, this fugitive and immaterial possession of the store for the few days while he was selling the mortgaged personal property was voluntarily surrendered by him before this proceeding was instituted. And the time when possession conditions the jurisdiction of the bankruptcy court in such a case as that in hand is the time when the proceeding that challenges the title, right, or lien of the adverse claim-

ant is commenced, in this case September, 1908, and at that time Booth was in possession and the trustee was not. The case must therefore be determined on the established fact that Booth was in actual possession of the property which is the source of the controversies here in issue when this proceeding was commenced, and that neither the bankruptcy court nor any of its officers ever had any possession thereof as the property of the bankrupt.

The respondent was an adverse claimant. The time which conditions the determination of the question whether or not one is an adverse claimant is the time when the proceeding is instituted which controverts his claim, and that time was September, 1908. It is, however, immaterial in this case whether the time of determining the existence of the adverse claim and of the possession of the property is the time of the challenge of Booth's claim, or the time of the filing of the petition in bankruptcy. Booth had possession of and claimed title under his certificates of foreclosure to the personal property for the conversion of which this proceeding is brought, and to the real estate subject only to the right of redemption of the latter at the time the petition for the order to show cause was presented in September, 1908. But he was, at the time the petition in bankruptcy was filed, and ever after, an adverse claimant within the meaning of the bankruptcy law, because he claimed a mortgage lien upon this property made by the bankrupt more than four months before the petition in bankruptcy was filed. A claim of paramount or absolute title is not essential to the character of an adverse claimant. One who has a substantial claim to a lien created by a bankrupt upon his property before the petition in bankruptcy is filed is equally an adverse claimant with one who claims absolute title thereto.

In First National Bank v. Title & Trust Co., 198 U. S. 280, 281, 289, 291, 25 Sup. Ct. 693, 695 (49 L. Ed. 1051), the trustee in bankruptcy sought by a summary proceeding to try the validity of a lien on personal property created by a pledge of it by the bankrupt. Objection to the jurisdiction of the bankruptcy court was made and sustained on the ground that the lienholders were adverse claimants and that the validity of their liens could be tried only by plenary suits at law or in equity. The Supreme Court said that the distinction between controversies at law and in equity and controversies arising in a proceeding in bankruptcy "existed under the prior bankruptcy law, and the then decisions in respect of a proceeding in bankruptcy and an independent suit are applicable. It was settled that the bankruptcy court was without jurisdiction to determine adverse claims to property not in the possession of the assignee in bankruptcy, by summary proceedings, whether absolute title or only a lien was asserted. Smith v. Mason, 14 Wall. 419, [20 L. Ed. 748]; Marshall v. Knox, 16 Wall. 551 [21 L. Ed. 481]; In re Bonesteel, 7 Blatchf. 175 [Fed. Cas. No. 1,627], Mr. Justice Nelson; Knight v. Cheney, 14 Fed. Cas. 760, Mr. Justice Clifford; In re Ballou, 4 Ben. 135 [Fed. Cas. No. 818], Mr. Justice Blatchford, then District Judge; In re Marter, 16 Fed. Cas. 857, Mr. Justice Brown, then District Judge. The present act was plainly framed in recognition of the principle of these cases." The bankruptcy court had found that the lienholders were in possession of

the property and were entitled to the proceeds of the sale of it. The Supreme Court decided that the decree of the District Court was not appealable, but remanded the case to that court, for further proceedings in conformity with its opinion, and said:

"In our view the District Court should have declined upon the findings to retain jurisdiction."

The proposition that the holder of a substantial claim to a lien created by a bankrupt upon his property is as much an adverse claimant as a claimant of absolute title, thus announced by the Supreme Court, is sustained by the following authorities: Jaquith v. Rowley, 188 U. S. 620, 621, 625, 626, 23 Sup. Ct. 369, 47 L. Ed. 620; Harris v. First National Bank, 216 U. S. 382, 383, 385, 30 Sup. Ct. 296, 54 L. Ed. 528; In re McMahon, 77 C. C. A. 668, 669, 147 Fed. 684, 685; Skilton v. Codington, 185 N. Y. 80, 84, 85, 77 N. E. 790, 113 Am. St. Rep. 885; Frank v. Vollkommer, 205 U. S. 521, 522, 526, 529, 27 Sup. Ct. 596, 51 L. Ed. 911; Carling v. Seymour Lumber Co., 113 Fed. 483, 484, 485, 490, 51 C. C. A. 1; In re Silberhorn (D. C.) 105 Fed. 899. It is not denied that in the multitude of decisions relating to this subject authorities may be found to the contrary. Goodnough Mercantile Co. v. Galloway (D. C.) 156 Fed. 504, 509; In re Briskman (D. C.) 132 Fed. 201, 202. But they are borne down by the decisions of the Supreme Court and by the great weight of authority and of reason. The question of jurisdiction here in issue must, therefore, be decided on the facts that Booth was in the possession of the property which is the subject of the controversies, that neither the bankruptcy court, nor any of its officers, were ever in possession of it as the property of the bankrupt, and that Booth had an adverse claim to it that was neither frivolous nor colorable, but substantial and made in good faith.

How, then, may the trustee escape from the decisions that have been cited, from the declarations of the Supreme Court that the jurisdiction of the bankruptcy court summarily to determine claims to liens upon and title to property claimed as that of the bankrupt arises out of its actual possession of the property (Murphy v. John Hofman Company, 211 U. S. 562, 568, 569, 570, 29 Sup. Ct. 154, 53 L. Ed. 327; First National Bank v. Title & Trust Co., 198 U. S. 281, 282, 291, 292, 25 Sup. Ct. 693, 49 L. Ed. 1051; Louisville Trust Co. v. Comingor, 184 U. S. 18, 24, 25, 22 Sup. Ct. 293, 46 L. Ed. 413), and is exclusive of all other courts because the actual possession draws to it the legal custody of the property, although otherwise such claims would be cognizable by other courts, the opinion of the Court of Appeals of the Sixth Circuit, delivered by Judge, now Mr. Justice Lurton, in Re McMahon, 147 Fed. 684, 685, 77 C. C. A. 668, 669, that "the controlling fact in the matter of the jurisdiction of the bankrupt court is that the actual possession of the premises upon which McMahon asserts an adverse lien was in Enos, the trustee in bankruptcy of Campbell, the bankrupt mortgagor," and the decision of the Supreme Court in Hiscock v. Varick Bank of New York, 206 U. S. 28, 41, 27 Sup. Ct. 681, 685, 51 L. Ed. 945, that "when the petition in the present case was filed the bank had a valid lien upon these policies for the pay-

ment of its debt. The contracts under which they were pledged were valid and enforceable under the laws of New York where the debt was incurred and the lien created. The bankruptcy act did not attempt, by any of its provisions, to deprive a lienor of any remedy which the law of the state vested him with; on the other hand, it provided (section 67d) 'liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act.' Mueller v. Nugent, 184 U. S. 1 [22 Sup. Ct. 269, 46 L. Ed. 405], is not to the contrary as explained in York Mfg. Co. v. Cassell, 201 U. S. 344 [26 Sup. Ct. 481, 50 L. Ed. 782]"? Counsel for the trustee answer on the ground that the filing of the petition in bankruptcy followed by the adjudication without more gave the bankruptcy court constructive possession of the property and vested it with jurisdiction to determine all claims of title to or liens upon it, although the actual possession of it was never acquired by the bankruptcy court, or any of its officers, but was permitted to pass without notice of the proceedings in it from the assignee, who had possession of it when bankruptcy proceedings were instituted, to the state court and its officers, and through them and its decree of foreclosure sale to the purchaser at that sale where it rested when this proceeding was commenced. In support of this contention they call attention to these propositions and authorities:

(1) The bankruptcy court has jurisdiction to draw to itself, and to determine by summary proceedings after reasonable notice to claimants, the merits of controversies between the trustee and such claimants over liens upon and the title to property claimed by the trustee as that of the bankrupt which has been lawfully reduced to the actual possession of the trustee or of some other officer of the bankruptcy court as the property of the bankrupt. Murphy v. John Hofman Company, 211 U. S. 562, 569, 570, 29 Sup. Ct. 154, 53 L. Ed. 327; White v. Schloerb, 178 U. S. 542, 545, 546, 548, 20 Sup. Ct. 1007, 44 L. Ed. 1183; In re Eppstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465; Thomas v. Woods, 173 Fed. 585, 587, 590, 97 C. C. A. 535, 537, 540, 26 L. R. A. (N. S.) 1180; Mound Mines Company v. Hawthorne, 173 Fed. 882, 886, 97 C. C. A. 394, 398; Goodnough Mercantile & Stock Co. v. Galloway (D. C.) 156 Fed. 504, 509; In re McMahon, 77 C. C. A. 668, 669, 671, 147 Fed. 684, 685, 687; Whitney v. Wenman, 198 U. S. 539, 549, 553, 25 Sup. Ct. 778, 49 L. Ed. 1157.

(2) Assignees for the benefit of creditors and receivers for the benefit of creditors in insolvency or in winding-up suits appointed after four months prior to the filing of a petition in bankruptcy are not adverse claimants, but are only representatives of the bankrupt and his unsecured creditors within the meaning of section 23 of the bankruptcy law, because they have and claim no lien upon, right to, or interest in the property in themselves for which they have given a valuable consideration. From them and from others holding the property of the bankrupt for him, including officers of other courts, who replevin or attach it without claim of lien upon, or right to, the prop-

erty in themselves, the bankruptcy court may by summary proceeding take the actual possession of the property and then, when it has thus acquired the actual possession, may by summary proceedings determine the validity of claims or liens upon and titles to it. Mueller v. Nugent, 184 U. S. 1, 14, 15, 22 Sup. Ct. 269, 46 L. Ed. 405: In re Watts and Sachs, 190 U. S. 1, 27, 23 Sup. Ct. 718, 47 L. Ed. 933; White v. Schloerb, 178 U. S. 542, 545, 546, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Davis v. Bohle, 1 Am. Bankr. Rep. 412, 415, 92 Fed. 325, 34 C. C. A. 372; In re Hecox, 164 Fed. 823, 825, 90 C. C. A. 627, 629; In re Briskman (D. C.) 132 Fed. 201; In re Weinger, Bergman & Co. (D. C.) 126 Fed. 875, 876; In re Alton Mfg. Co. (D. C.) 158 Fed. 367; Randolph v. Scruggs, 190 U. S. 533, 536, 23 Sup. Ct. 710, 47 L. Ed. 1165; Matter of Cameron, Currie & Co., 20 Am. Bankr. Rep. 790. But this rule is inapplicable even in cases of a general assignment within four months of the proceedings in bankruptcy where the general assignee claims a right in himself to a lien upon or title to property assigned and taken possession of by him as assignee for commissions earned or moneys expended under the assignment. Louisville Trust Company v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. Again, this rule is irrelevant in the case at bar in any event because no proceeding was ever commenced, or act done by the bankruptcy court, or by any of its officers, to take, and none of them ever did acquire, possession of the mortgaged property as the property of the bankrupt.

(3) Authorities are also cited to the effect that the bankruptcy court may by a like proceeding take away from a receiver of a state court, appointed to enforce a substantial claim of a mortgage or other lien upon the bankrupt's property, the actual possession thereof first acquired by him and may then proceed to adjudicate the claims to liens. In re Kaplan (D. C.) 16 Am. Bankr. Rep. 267, 144 Fed. 159; In re Knight (D. C.) 125 Fed. 35. But these decisions are overborne by the highest authority and by the reason of the case. Louisville Trust Co. v. Comingor, 184 U. S. 18, 24, 25, 22 Sup. Ct. 293, 46 L. Ed. 413; Eyster v. Gaff, 91 U. S. 521, 522, 525, 23 L. Ed. 403; Metcalf v. Barker, 187 U. S. 165, 172, 175, 176, 177, 23 Sup. Ct. 67, 47 L. Ed. 122; Carling v. Seymour Lumber Co., 113 Fed. 483, 484, 485, 490, 51 C. C. A. 1. In Louisville Trust Co. v. Comingor, a general assignment was made by the bankrupt within four months preceding the filing of the petition in bankruptcy, and the assignee thereby became an officer of the state court, holding and administering the trust under its orders. The bankruptcy court appointed a receiver, and the assignee turned over to him the balance of the proceeds of the sales he had made above his disbursements save $3,398.90, which he retained for his fees as assignee, and $3,200, which he had paid to his counsel for their services to him as assignee. In a summary proceeding the bankruptcy court ordered him to show cause why he should not pay these amounts over to its receiver, and, over his objection that it had no jurisdiction so to do, it determined the merits of the controversy and ordered him to pay the amounts to the trustee in bankruptcy. But the Supreme Court held that the assignee was an adverse claimant of these amounts, that the District Court was without juris-

diction to determine the merits of his claim in a summary proceeding, and said:

"We think it could not have been the intention of Congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of the law in defense of their rights. Marshall v. Knox, 16 Wall. 556 [21 L. Ed. 481]; Smith v. Mason, 14 Wall. 419 [20 L. Ed. 748]. The question is whether the District Court had jurisdiction to finally adjudicate the merits in this proceeding. We have just held in Mueller v. Nugent, 184 U. S. 1 [22 Sup. Ct. 269, 46 L. Ed. 405], that the District Court has power to ascertain whether in the particular instance the claim asserted is an adverse claim existing at the time the petition was filed. And according to the conclusion reached the court will retain jurisdiction, or decline to adjudicate the merits."

And it affirmed a reversal of the order of the District Court which had been made by the Circuit Court of Appeals.

(4) Counsel also cite, and seem to place reliance upon, Bryan v. Bernheimer, 181 U. S. 188, 194, 195, 197, 21 Sup. Ct. 557, 45 L. Ed. 814, and In re Knight (D. C.) 125 Fed. 35, two cases in which the bankruptcy court in summary proceedings required purchasers from an assignee and a receiver to surrender to the bankruptcy court the property they had bought. But, as we have shown, the latter case is contrary to the decisions of the Supreme Court that a mortgagee, and hence an officer appointed in a suit to foreclose the mortgage to hold the property for the mortgagee, is an adverse claimant, and to its decisions that a bankruptcy court has no jurisdiction to determine the merits of the claims of such claimants in possession of the property to liens created thereon before the petition in bankruptcy was filed. Moreover, the purchaser from the receiver in the Knight Case had not paid for the property he bought, and that property was not covered by the mortgage, but was sold to him by the receiver as the general assignee. The decision in Bryan v. Bernheimer does not rule the question of jurisdiction at issue in this case because Bernheimer was the purchaser at a general assignee's sale and not under a sale under a decree of court to enforce a lien created before the petition in bankruptcy was filed, because Bernheimer consented to the form of procedure and requested the decision of the merits of his claim in the summary proceeding, and because he knew that a petition in bankruptcy had been filed before he voluntarily purchased at the assignee's sale. 181 U. S. 197, 21 Sup. Ct. 557, 45 L. Ed. 814. Booth, on the other hand, claims under a lien in existence more than four months before the petition in bankruptcy was filed. He has persistently challenged the jurisdiction of the bankruptcy court, and neither he nor the receiver appointed by the state court in the suit to foreclose his mortgage, nor the state court that rendered the decree and confirmed the sales to him, ever had any notice of the filing of the petition in bankruptcy, or of any of the proceedings thereunder, until after the sales under the foreclosure decree were made and confirmed. They were not parties to but strangers to those proceedings.

(5) But counsel insist here that the filing of the petition in bankruptcy "is a caveat to all the world and in effect an attachment and injunction," and they cite Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405, and the numerous opinions of the courts

that repeat this statement. But the later decisions of the Supreme Court adjudge that this statement applies only to parties who have no substantial claim of a lien upon or a title to the property of the bankrupt, and that, against those who have such claims of existing liens or titles when the petition in bankruptcy is filed, that filing is neither a caveat nor an attachment, that it creates no lien, and that until the bankruptcy court by some act of one of its officers takes actual possession of the property, or makes such claimants parties to the proceeding by some order or process, or notice of the proceeding comes to them, their liens, titles, and remedies are unaffected thereby, and they are strangers to the proceeding. Jaquith v. Rowley, 188 U. S. 620, 625, 23 Sup. Ct. 369, 47 L. Ed. 620; York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 353, 26 Sup. Ct. 481, 50 L. Ed. 782; Hiscock v. Varick Bank of New York, 206 U. S. 28, 41, 27 Sup. Ct. 681, 51 L. Ed. 945.

(6) In cases in which the bankruptcy court finds it absolutely necessary so to do for the preservation of the estate, it may by summary proceedings take possession of the property claimed to belong to the bankrupt as his property, in whosoever's hands it may be, upon the filing of the petition in bankruptcy and before a trustee is appointed, under clause 3 of section 2 of the bankruptcy law. But the bankruptcy court took no such possession, nor any other possession of the property as the property of the bankrupt in the case in hand.

These propositions, the authorities above, and many others cited by counsel for the trustee and examined, fail to convince that the filing of the petition in bankruptcy and the adjudication, without any acquisition or demand of possession of the property by any officer of the bankruptcy court, or any notice of the proceeding therein to the mortgagee, the state court, its receiver, or the purchaser at its foreclosure sale, conferred upon it jurisdiction to determine by a summary proceeding the merits of Booth's adverse claim to the mortgage liens upon the property at the time the petition in bankruptcy was filed, or his adverse claim at the time the petition for the order to show cause was filed to the moneys which the trustee thereby seeks to recover from him for the conversion of the personal property, and to the real estate subject to the possible right of the trustee to redeem from the foreclosure sale thereof by paying the amount Booth paid therefor at that sale.

If the commencement of bankruptcy proceedings without more, without any act of the bankruptcy court, or any of its officers, to give notice to adverse claimants, or to reduce the property claimed to belong to the bankrupt to the possession of the officers of that court as his property, gives it constructive possession, and hence a legal custody that enables it to determine by summary proceedings the merits of adverse claims to liens and titles to such property in the actual possession of others, then no case could ever arise in which any other court could have jurisdiction by plenary suit to determine the merits of such claims, for in every case a bankruptcy proceeding is commenced, and the only ground on which the jurisdiction to determine summarily the merits of such claims is sustained is that the bankruptcy court's legal custody of the property excludes the juris-

diction of every other court and gives it the power to determine summarily all claims to liens upon, or interests in, the property in such custody. But this theory flies in the face of the settled rule repeatedly announced by the Supreme Court that the actual possession by the bankruptcy court is the indispensable condition of its exclusive and of its summary jurisdiction here. In Bardes v. Hawarden Bank, 178 U. S. 524, 536, 20 Sup. Ct. 1000, 1005 (44 L. Ed. 1175), the court held that the clause of section 23 of the bankruptcy law giving jurisdiction of controversies at law or in equity between trustees as such and adverse claimants to the Circuit Courts in the same manner and to the same extent as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupt and such adverse claimants "indicates the intention of Congress that the ascertainment, as between the trustee in bankruptcy and a stranger to the bankruptcy proceedings, of the question whether certain property claimed by the trustee does or does not form part of the estate to be administered in bankruptcy, shall not be brought within the jurisdiction of the national courts solely because the rights of the bankrupt and of his creditors have been transferred to the trustee in bankruptcy."

In First National Bank v. Title & Trust Co., 198 U. S. 280, 281, 282, 291, 292, 25 Sup. Ct. 693, 49 L. Ed. 1051, there was a petition and an adjudication in bankruptcy, and the appointment of a receiver therein who filed a petition for the sale of certain property as that of the bankrupt, and alleged that he had taken possession thereof. Lienholders objected to the jurisdiction of the bankruptcy court and denied the possession of the receiver. The District Court found that he had no possession, and the Supreme Court declared that that finding was fatal to the jurisdiction of the District Court to determine summarily the merits of the claims of the lienholders.

In Louisville Trust Company v. Comingor, 184 U. S. 18, 24, 25, 22 Sup. Ct. 293, 46 L. Ed. 413, the property in controversy was in the possession of a general assignee in insolvency, to whom it had been assigned within four months of the filing of the petition in bankruptcy; but the decision of the Supreme Court was the same, that in the absence of actual possession taken from the general assignee by some officer of the bankruptcy court that court had no jurisdiction to determine summarily the adverse claim of the assignee to commissions and expenses on his behalf.

In Murphy v. John Hofman Company, 211 U. S. 562, 569, 570, 29 Sup. Ct. 154, 157 (53 L. Ed. 327), that court said:

"The jurisdiction in such cases arises out of the possession of the property and is exclusive of all other courts, although otherwise the controversy would be cognizable by them."

And after reviewing Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, and White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, declared that:

"The last two cases cited proceed upon and establish the principle that when the court of bankruptcy, through the act of its officers, such as referees, receivers, or trustees, has taken possession of the res, as the property of the

bankrupt, it has ancillary jurisdiction to hear and determine the adverse claims of strangers to it, and that its possession cannot be disturbed by the process of any other court."

Here is the touchstone of the exclusive and of the summary jurisdiction of the bankruptcy court to determine the merits of adverse claims to liens upon and titles to property claimed to belong to the bankrupt. It is the taking possession of the property, as the property of the bankrupt, by the act of some officer of the bankruptcy court, such as a referee, a receiver, or a trustee. This is the touchstone of its summary jurisdiction, unless indeed the declaration of the Supreme Court in Babbitt v. Dutcher, 216 U. S. 102, 113, 30 Sup. Ct. 372, 377, 54 L. Ed. 402, deprives it of the power to acquire this summary jurisdiction to determine adverse claims to liens upon and titles to property of the bankrupt created by mortgages and conveyances made prior to the filing of the petition in bankruptcy, even by acquiring possession of the property. In that case the Supreme Court declares that:

"Where there is a claim of adverse title to property of the bankrupt based upon a transfer antedating the bankruptcy, * * * a plenary suit must be brought either at law or in equity by the trustee in which the adverse title can be tried and adjudicated."

Under either rule the court below had no jurisdiction to determine in a summary proceeding the merits of the claim of Booth. Under the former rule that court had never through the act of its officers, such as referees, receivers, or trustees, taken possession of the property which is the source of the controversies here presented, as the property of the bankrupt. Under the latter rule a mortgage is a transfer, and the adverse claim of Booth is "based on a transfer antedating the bankruptcy," and "a plenary suit must be brought either at law or in equity by the trustee in which the adverse claim of title can be tried and adjudicated."

Nor is this result either unjust or unreasonable. More than four months before the petition in bankruptcy was filed Booth had mortgages upon the property that is the source of this controversy, and he had the right to foreclose those mortgages by a plenary suit in the state court for any default in payment of the debt. His mortgagor's assignment deprived him of none of those rights. That assignment was not under all circumstances illegal. It was voidable only in case bankruptcy proceedings were commenced within four months after it was executed. Randolph v. Scruggs, 190 U. S. 533, 537, 23 Sup. Ct. 710, 47 L. Ed. 1165. Such proceedings were commenced and an adjudication was made. But Booth was not a party to those proceedings. He had no notice of them and was a stranger to them. The bankruptcy court might, and upon a proper showing by the unsecured creditors who commenced the proceedings in that court it undoubtedly would, have taken possession of this property by its marshal, or by its receiver; but it was not required to, and it did not do so. If the liens upon the property were valid and amounted to the value of the mortgaged property, it was the duty of the bankruptcy court

to refuse to take possession of and to administer that property. In re Harralson, 179 Fed. 490, 492, 103 C. C. A. 70. It did not take possession, and more than a month after the adjudication Booth found his mortgaged property in the possession of the general assignee who was selling the personal property under the assignment to him. No receiver or trustee had been appointed in the bankruptcy proceedings, and the title and possession of the mortgaged property were in the assignee, for it is not until the appointment and qualification of the trustee that the title vests in him as of the date of the adjudication (section 70a), and there was no certainty that a trustee ever would be appointed. In fact, none was appointed until after the foreclosure sales had been made and confirmed by the state court. In this state of the case, Booth commenced his suit in the state court to foreclose the mortgage and served his process upon the bankrupt and the assignee, the only persons that had either title or possession of the mortgaged property. That court appointed a receiver who took from the assignee the possession of the mortgaged property and under the decree of foreclosure of that court sold it to Booth, and that court confirmed the sale. It was the intention of the bankruptcy law to allow adverse claimants to property, or parties having liens, to establish their rights by suits in courts of plenary jurisdiction and not to subject them to summary disposition in the bankruptcy court unless when the claims are frivolous or made in bad faith. Bardes v. Hawarden Bank, 178 U. S. 524, 537, 20 Sup. Ct. 1000, 1004, 44 L. Ed. 1175, where the Supreme Court quotes from its decision in Eyster v. Gaff, 91 U. S. 521, 525, 23 L. Ed. 403, under the act of 1867, the statements that:

"The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions."

In Hiscock v. Varick Bank, 206 U. S., at page 41, 27 Sup. Ct., at page 685 (51 L. Ed. 945), the Supreme Court declared that:

"The bankruptcy act did not attempt by any of its provisions to deprive a lienor of any remedy which the law of the state vested him with."

To the same effect are Skilton v. Codington, 185 N. Y. 80, 85, 77 N. E. 790, 113 Am. St. Rep. 885; Frank v. Vollkommer, 205 U. S. 521, 522, 526, 529, 27 Sup. Ct. 596, 51 L. Ed. 911.

Conceding, however, but neither deciding nor admitting, that the bankruptcy court might have enjoined the suit in the state court, might have taken the mortgaged property from the receiver of that court and have administered it, the fact remains that it did not do so, and that it and the creditors who were parties to that proceeding must have known from the bankrupt's inventory of this property of the possession and the continuing sales of this mortgaged property by the assignee and the receiver of the state court. In William Openhym & Sons v. Blake, 157 Fed. 536, 539, 87 C. C. A. 122, 125, this court sustained, and the Supreme Court affirmed its decision, the demand of an adverse claimant founded on a rescission of a contract

and an identification of goods effected by an action in replevin against a receiver of a state court commenced after the commencement of bankruptcy proceedings, and said:

"While the bankruptcy court refrained from taking possession of the goods, the appellant should not suffer. The goods were in the custody of the law, and the acts of the state court and its receiver were presumably for the benefit of the estate."

The state court that conducted the foreclosure suit could not take notice of the bankruptcy proceeding. It was the duty of that court to proceed to a decree of foreclosure as between the parties before it until by some proper pleading or application in the case in that court it was informed of the bankruptcy proceedings. Having jurisdiction of the mortgagee, of the mortgagor, and of his grantee, who had title and possession of the mortgaged property, how can its decree be treated as void? Eyster v. Gaff, 91 U. S. 521, 525, 23 L. Ed. 403. Could the creditors who conducted the proceeding in the bankruptcy court, represented here by the trustee, sit by with knowledge of the possession of the mortgaged property in the receiver of the state court until four months after the mortgagee and the state court, that were strangers to the bankruptcy proceedings, sold and delivered the property under a foreclosure decree to a purchaser, without being estopped by that decree or sale, or by their silence and inaction? The merits of this case are not now here for consideration, but these questions demand answers from the court that eventually acquires jurisdiction to determine them, and the facts which have been briefly reviewed demonstrate the substantial basis of Booth's adverse claim and present persuasive reasons for the rule which assures a trial of the merits of that claim in a plenary suit at law or in equity under the rules of pleading, of practice and of evidence, that wisdom and experience have found most conducive to the discovery of the truth and the administration of justice.

The trustee, out of abundance of caution, presents this case by appeal and by petition to revise. The appeal must be dismissed because the order below was not reviewable by appeal, and the petition to revise must be dismissed because the order of the court below was right and it had no jurisdiction to determine in a summary proceeding the merits of the adverse claim of Booth.

It is so ordered.